606

## JARDINE v. HARTOG.

Court of Customs and Patent Appeals.   January 13, 1930.

Patent Appeal No. 2143.

Richey & Watts, of Cleveland, Ohio (F. O. Richey, B. D. Watts, A. H. Van Horn, and Frederic M. Bosworth, all of Cleveland, Ohio, of counsel), for appellant.

Lawrence C. Kingsland, of St. Louis, Mo. (John D. Rippey, of St. Louis, Mo., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.   This is an appeal in an interference proceeding from a decision of the Commissioner of Patents.

The Examiner of Interferences, the Examiners in Chief, and the Commissioner of Patents have concurred in awarding priority of invention to appellee, Stephen D. Hartog. The invention in issue relates to certain structural improvements in pistons for internal combustion engines.

The counts in issue read as follows:

"Count 1.  In a piston of the class described, a cup-like head comprising a pressure receiving end and a well portion, a skirt circumferentially disconnected from the wall portion of the head and divided from end to end, and skirt carriers connecting said skirt to the pressure receiving end, said skirt carriers being disconnected from the wall portion of the head and susceptible of being slightly flexed radially.

"Count 2.  A piston comprising a head, a skirt having resilient sections separated from said head by a slit extending continuously around the piston, and means for yieldingly connecting said skirt sections with said head."

As aluminum expands more rapidly than iron, when heated, it has always been necessary, when using aluminum pistons, to allow considerable clearing for expansion, so that, when heated, they would not "score" the iron cylinders.  When the pistons were cold, they not only "slapped" and made considerable noise, but oil was permitted to enter into, and gas to escape from, the cylinders.  These difficulties, according to the claims of the parties to this interference, have been solved by the involved invention.

Hartog's application, No. 359,137, was filed on February 16, 1920.

Jardine's application, No. 450,898, is a renewal of an application originally filed March 11, 1920.  Jardine is therefore the junior party and has the burden of proof.

In his preliminary statement, Hartog made the following claims: That he conceived the invention and disclosed it to others on or about November 15, 1918; that he made his first drawings on or about August 1, 1919; and that on or about September 1, 1919, he reduced the invention to practice by making a piston of the kind in issue.

In his preliminary statement as to count 1, Jardine alleged that he conceived the invention and disclosed it to others on or about May 11, 1919; that he made drawings on or about July 24, 1919; that on or about March 9, 1920, he made the first written description of the invention; and that he never made or operated any full sized pistons embodying the invention.

Originally, there were two interferences, Nos. 49,578 and 49,583.  Later these two interferences were consolidated, and count 2 involved here was taken from interference No. 49,583.

In his preliminary statement as to count 2, Jardine alleged that he conceived the invention and disclosed it to others on or about May 11, 1919; that on or about July 24, 1919, he made drawings; that on or about March 9, 1920, he prepared a written description; that he first embodied the invention "in the full sized piston casting which was made on or about December 13, 1919"; and that on or about March 5, 1920, pistons embodying the invention were first successfully operated.

Thereafter, and during the progress of the taking of testimony, Jardine filed a motion to amend his preliminary statement as to count 2, in the following respects:

"5. That he first embodied the invention of the said count in a full sized piston, which was made on or about August 5, 1919;

"6. That on or about August 5, 1919, the first full sized piston embodying the invention of the said count was first successfully operated in Cleveland, Ohio. *  *  * "

A ruling on the motion to amend the preliminary statement was deferred by the Examiner of Interferences until after the evidence of the parties had been submitted. When the evidence was finally submitted, the Examiner of Interferences denied the motion on the ground that Jardine had failed to establish the facts alleged therein.

Each of the tribunals below have exhaustively considered and analyzed the evidence, and have concurred in awarding priority of invention to appellee, Hartog. Accordingly, this court ought not to reverse the decision of the Commissioner, unless it is manifestly erroneous. Authorities need not be cited in support of this proposition.

The Examiner of Interferences held that appellant was entitled to May 11, 1919, for conception and disclosure; that appellee, Hartog, was entitled to about October 6, 1919, for conception and disclosure. He found that neither party had reduced the invention to practice, prior to the filing of their respective applications; and that, while appellant was the first to conceive the invention, he was not diligent in reducing it to practice; and therefore, as appellee was first to file his application, he was entitled to an award of priority.

The Examiners in Chief held, and properly so we think, that appellee actually conceived and disclosed the invention to others as early as December, 1918; that neither party had reduced the invention to practice prior to the filing of their respective applications; that appellant was entitled to no earlier date than July for conception and disclosure; and that, as appellee was the first to file an application for the invention, he was entitled to an award of priority.

In making these findings, the Examiners in Chief discussed the evidence in considerable detail. It is therefore unnecessary for us to restate the facts upon which the decision was based.

The Examiners in Chief further said that, if they were wrong in holding that appellee was the first to conceive the invention, nevertheless he was entitled to an award of priority, because of the failure of appellant to exercise diligence in reducing the invention to practice.

The Commissioner of Patents affirmed the decision of the Examiners in Chief, and, again, the facts in the case were clearly, concisely, and, in our opinion, correctly stated.

Although he awarded priority of invention to appellee, the Examiner of Interferences, in considering the evidence in the case, extended the utmost consideration to appellant, the junior party. We quote from his decision:

"There are some weak points in the testimony of Stark, Miller and Kauffman. Stark, for instance, fixes the date of disclosure by reference to a business conference between himself and Hartog which related to an altogether different matter and he admitted (Q. 8, p. 79, Hartog's printed record) he met Hartog on several occasions thereafter, and on some of these they discussed Hartog's piston. Stark, therefore, must be considered to fix the disclosure early in December, 1918, by sheer feat of memory. The same may be said about Kauffman (Q. 9) and Miller (XQ. 36).

"Notwithstanding this and notwithstanding the witnesses were testifying some seven years after the event, it is believed to be proper if Jardine is to be accorded May 11, 1919, for disclosure to accept the testimony as establishing a date as early as July 22, 1919, for disclosure of the invention, since Hartog and his son Paul, Miller, Kauffman, and Stark all gave testimony to support a date as early as that and even much earlier. *Indeed, it would be as proper to accord Hartog a date for disclosure prior to May 11, 1919, but that is not important as will appear hereinafter.*" (Italics ours.)

It is true that the witnesses Stark and Miller, who said that Hartog disclosed the invention to them in December, 1918, testified from memory. However, Stark's testimony was given in September, 1921, in another interference proceeding, No. 45,351, and it was incorporated into this record by stipulation of counsel. Therefore the criticism that his testimony was given seven years after the matters involved therein had taken place is not well founded.

The testimony of the witness Stark is clear, concise, and intelligently positive. Furthermore, the reasons he gave for recalling that Hartog disclosed the invention to him in December, 1918, are reasonable and plausible.

It is true that no drawings or other documentary evidence was offered to corroborate this witness. Had his testimony been fabri-

cated, it would have been an easy matter for him to have produced corroborative documentary evidence. His testimony and that of Hartog is, to some extent, corroborated by that of the witness Prudot, who recalled that Hartog and Stark had some conversation concerning Hartog's invention, and that Hartog explained the invention in detail to Stark. He frankly admitted, however, that he did not recall the details of the conversation.

It further appears that Hartog disclosed the invention to the witness Miller some time in December, 1918. Miller was associated in business with Hartog during the years 1918 and 1919; and the reasons he gave for recalling the conversation with Hartog and the date when it occurred are reasonable, and in our opinion his testimony is entitled to great weight.

We have searched the record to ascertain whether appellant is entitled to a finding that he reduced the invention to practice prior to his filing date. We are unable to find any evidence from which such a fact may be deduced.

For at least three months during the summer and fall of 1919, appellant's assignee, the Aluminum Castings Company, was engaged in testing a "Ricardo piston." There is testimony to the effect that some one "split" the "skirt" of one of the "Ricardo pistons"; that it was then tested by "hand pressure" to ascertain its flexibility; and that it was found to be sufficiently flexible for operative purposes. However, assuming that the altered "Ricardo piston" conformed to the subject-matter of the issue, we are not impressed with the contention that the involved invention and its intended functions are sufficiently simple to make a "hand pressure" test an actual reduction to practice.

Counsel for appellant, in arguing that the hand pressure test of the alleged invention was an actual reduction to practice, has gone so far as to say: "We say that the Aluminum Castings Company was justified in continuing the tests on the Ricardo piston before testing the piston of Exhibits 1 and 2, both because the Ricardo piston was routed ahead of Exhibits 1 and 2 and because since the improvement of the piston of Exhibits 1 and 2 is so slightly different from that of the Ricardo piston and the effect of the changes were so well known that the work upon the Ricardo piston was work upon the Jardine piston of Exhibits 1 and 2. * * * We would not contend that this hand test was sufficient to demonstrate its operativeness, if the Ricardo piston had been a virgin piston. * * * The splitting of the skirt was an improvement which, as we have already said, had been tried out in a number of other types of pistons. The change in operation which it would effect in the Ricardo piston was well known. In fact, not even hand tests were necessary to prove to the skilled engineer the effect upon the Ricardo piston of splitting the skirt."

These statements come very close to suggesting that the alleged invention is not patentable.

It seems perfectly obvious from the testimony that the officers of the Aluminum Castings Company had but little confidence in the alleged invention of appellant until late in the year 1919 or early in the year 1920. As stated by the witness Watts (at that time counsel for appellant): "The policy [of appellant's assignee, the Aluminum Castings Company] was always to be certain that an application was not being filed on a half-baked idea."

In concluding his opinion, the Commissioner of Patents said: "The party Hartog was the first to conceive and the first to reduce to practice, constructively, but even if the party Jardine had been first to conceive, his lack of diligence would prevent him from prevailing. It follows therefore that priority should be awarded to Hartog."

We agree with the views expressed by the Commissioner of Patents, and his decision is affirmed.

Affirmed.